UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVID GARZA CANTU,                    )
                                      )   No. CV-10-335-CI
            Plaintiff,                )
                                      )   ORDER GRANTING DEFENDANT'S
v.                                    )   MOTION FOR SUMMARY JUDGMENT
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social                )
Security,                             )
                                      )
            Defendant.                )
_____   )

     BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF
No. 14, 16.)  Attorney Jeffrey Schwab represents David Garza Cantu
(Plaintiff); Special Assistant United States Attorney Benjamin
Groebner represents the Commissioner of Social Security (Defendant).
The parties have consented to proceed before a magistrate judge.
(ECF No. 11.)  After reviewing the administrative record and briefs
filed by the parties, the court **GRANTS** Defendant's Motion for
Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

                          **JURISDICTION**

     Plaintiff protectively filed for disability insurance benefits
(DIB) and Supplemental Security Income (SSI) on August 25, 2008.
(Tr. 134-42.)  He alleged disability due to headaches, pain in his
hips, upper and lower back, tailbone, elbows and hands, and he also
alleged his hands were numb.  (Tr. 161.)  He alleged an onset date
of January 6, 2008.  (Tr. 161.)  His claim was denied initially and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1  on reconsideration.   (Tr. 90-93; 96-99.)   Plaintiff requested a

2  hearing before an administrative law judge (ALJ), which was held on

3  December 17, 2009, before ALJ James W. Sherry. (Tr. 47-85.)   At the

4  hearing, vocational expert Daniel McKinney and Plaintiff testified.

5  (Tr. 53-84.)   The ALJ denied benefits on February 3, 2010, and the

6  Appeals Council denied review.   (Tr. 1-3; 15-26.)   The instant

7  matter is before this court pursuant to 42 U.S.C. § 405(g).

8                    **STATEMENT OF THE CASE**

9      The facts of the case are set forth in detail in the transcript

10  of proceedings and are briefly summarized here.   At the time of the

11  hearing, Plaintiff was 60 years old.   (Tr. 53.)   He left school

12  after the ninth grade and later earned a GED.   (Tr. 54.)   He lives

13  in a mobile home with his wife.   (Tr. 54.)   Plaintiff earned a

14  living selling cars, as a farm laborer, truck driver, and a heavy

15  machine operator.   (Tr. 51; 58.)   He testified that he fell off a

16  semi-truck in 2002 and hit his head.   Later, he suffered two

17  additional head injuries, one in 2004 and one in 2007.   (Tr. 59.)

18  He reported that he stopped working due to headaches, pain in his

19  hips, back, elbow, and pain and numbness in his hands.   (Tr. 161.)

20  He testified that he can read the newspaper "a little bit," but he

21  forgets what he reads, and he has difficulty comprehending what he

22  has read. (Tr. 54.) He testified that he has to sit down frequently,

23  and cannot stand or walk for too long.   (Tr. 66.)   He goes to his

24  in-laws' house with his spouse most days and, while there, sits and

25  visits.   (Tr. 68-69.)   Plaintiff testified that he can drive short

26  distances, watches four hours of television per day, and he helps

27  with household chores.   He bought a fishing license because he

28  thought his son would invite him fishing, but he went fishing only

1    once in the past year.  (Tr. 72.)

2                    **ADMINISTRATIVE DECISION**

3         ALJ James Sherry found Plaintiff's date of last insured for DIB

4    purposes was December 31, 2013.  (Tr. 15.)  At step one, the ALJ

5    found Plaintiff had "probably" engaged in substantial gainful

6    activity since January 6, 2008, the alleged onset date.  (Tr. 17.)

7    Because it was "unclear how much money the claimant actually earned

8    since the alleged onset date," the ALJ proceeded with the sequential

9    five-step analysis.  (Tr. 17.)  At step two, the ALJ found Plaintiff

10   had the following severe impairments:  (1) degenerative disc disease

11   of the cervical spine; (2) status-post discectomy with fusion; (3)

12   lumbar strain; (4) right shoulder strain; (5) headaches; and (6)

13   mild carpal tunnel syndrome. (Tr. 18.)  The ALJ determined at step

14   three Plaintiff's medically determinable impairments, alone and in

15   combination, did not meet or medically equal one of the listed

16   impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4

17   (Listings).  (Tr. 19.)  The ALJ found Plaintiff's subjective

18   complaints regarding functional limitations were not fully credible.

19   (Tr. 20-21.)  At step four, he determined Plaintiff's residual

20   functional capacity as the ability to:

21        [P]erform light work as defined in 20 C.F.R. 404.1567(b)
          and 416.967(b) except that the claimant is limited to
22        lifting 20 pounds at one time and frequently lifting or
          carrying 10 pounds.  The claimant can stand/walk and sit
23        for a total of six hours each in an eight-hour workday.
          The claimant has no restrictions in pushing or pulling
24        with his upper extremities, but should never climb
          ladders, ropes or scaffolds.  He can occasionally climb
25        ramps or stairs, frequently balance, stoop, crouch, kneel,
          crawl, reach and reach overhead.  The claimant should
26        avoid concentrated exposure to extreme cold, unprotected
          heights, and the use of moving machinery.

27

28   (Tr. 19.) The ALJ found Plaintiff could perform his past relevant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1  work selling cars.  (Tr. 25.)  The ALJ ultimately found Plaintiff

2  was not disabled from January 6, 2008, through the date of his

3  decision (February 3, 2010).  (Tr. 26.)

4                          **STANDARD OF REVIEW**

5      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

6  court set out the standard of review:

7          A district court's order upholding the Commissioner's
           denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
8          211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
           Commissioner may be reversed only if it is not supported
9          by substantial evidence or if it is based on legal error.
           *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
10         Substantial evidence is defined as being more than a mere
           scintilla, but less than a preponderance.  *Id.* at 1098.
11         Put another way, substantial evidence is such relevant
           evidence as a reasonable mind might accept as adequate to
12         support a conclusion.  *Richardson v. Perales*, 402 U.S.
           389, 401 (1971).  If the evidence is susceptible to more
13         than one rational interpretation, the court may not
           substitute its judgment for that of the Commissioner.
14         *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
           Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

15
           The ALJ is responsible for determining credibility,
16         resolving conflicts in medical testimony, and resolving
           ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
17         Cir. 1995).  The ALJ's determinations of law are reviewed
           *de novo*, although deference is owed to a reasonable
18         construction of the applicable statutes.  *McNatt v. Apfel*,
           201 F.3d 1084, 1087 (9th Cir. 2000).

19

20      It is the role of the trier of fact, not this court, to resolve

21  conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence

22  supports more than one rational interpretation, the court may not

23  substitute its judgment for that of the Commissioner.  *Tackett*, 180

24  F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

25  Nevertheless, a decision supported by substantial evidence will

26  still be set aside if the proper legal standards were not applied in

27  weighing the evidence and making the decision.  *Brawner v. Secretary

28  of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  there is substantial evidence to support the administrative

2  findings, or if there is conflicting evidence that will support a

3  finding of either disability or non-disability, the finding of the

4  Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-

5  1230 (9th Cir. 1987).

6                        **SEQUENTIAL EVALUATION PROCESS**

7      Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

8  requirements necessary to establish disability:

9          Under the Social Security Act, individuals who are
   "under a disability" are eligible to receive benefits. 42
10  U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
   medically determinable physical or mental impairment"
11  which prevents one from engaging "in any substantial
   gainful activity" and is expected to result in death or
12  last "for a continuous period of not less than 12 months."
   42 U.S.C. § 423(d)(1)(A). Such an impairment must result
13  from "anatomical, physiological, or psychological
   abnormalities which are demonstrable by medically
14  acceptable clinical and laboratory diagnostic techniques."
   42 U.S.C. § 423(d)(3). The Act also provides that a
15  claimant will be eligible for benefits only if his
   impairments "are of such severity that he is not only
16  unable to do his previous work but cannot, considering his
   age, education and work experience, engage in any other
17  kind of substantial gainful work which exists in the
   national economy . . ." 42 U.S.C. § 423(d)(2)(A). Thus,
18  the definition of disability consists of both medical and
   vocational components.

19

20     The Commissioner has established a five-step sequential

21  evaluation process for determining whether a person is disabled. 20

22  C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S.

23  137, 140-42 (1987). In steps one through four, the burden of proof

24  rests upon the claimant to establish a prima facie case of

25  entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d

26  920, 921 (9th Cir. 1971). This burden is met once a claimant

27  establishes that a medically determinable physical or mental

28  impairment prevents her from engaging in her previous occupation.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

### ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff contends the ALJ erred by finding that Plaintiff engaged in substantial gainful activity in 2008. (ECF No. 15 at 7.) He also contends the ALJ erred by finding Plaintiff lacked credibility and by failing to find that Plaintiff had a severe mental impairment. (ECF No. 15 at 8-15.) Finally, Plaintiff contends that the ALJ erred in determining Plaintiff's residual functional capacity. (ECF No. 15 at 15-16.) Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error. (ECF No. 16.)

### DISCUSSION

### 1. Substantial Gainful Activity.

The Plaintiff contends the ALJ erred by finding that Plaintiff had engaged in gainful substantial activity in 2008. Plaintiff reported income in 2008 of $8,866 that he said he billed to people he helped with immigration paperwork. (Tr. 57.) The ALJ found that "[i]t is probably [sic] that the claimant has engaged in substantial

gainful activity since January 6, 2008[.]" (Tr. 17.)  The ALJ found Plaintiff's assertion that he billed the amounts but was never paid was "not very credible."  (Tr. 17.)  The ALJ concluded, "[h]owever, because it is unclear how much money the claimant actually earned since the alleged onset date, the undersigned will continue with the sequential five-step analysis."  (Tr. 17.)

Substantial gainful activity is "work activity that is both substantial and gainful."  20 C.F.R. §§ 404.1572, 416.972. Substantial work activity is work activity that involves doing significant physical or mental activities.  Work may be substantial even if it is done on a part-time basis, or if the claimant does less, gets paid less, or has less responsibility than when the claimant worked before.  20 C.F.R. §§ 404.1572(a), 416.972(a). Gainful work activity is work activity that a claimant does for pay or profit, and it is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b). "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).  Illegal activity can qualify as substantial gainful activity.  20 C.F.R. §§ 404.1571, 416.971.  Additionally, substantial gainful activity may be found when the claimant receives no income.  20 C.F.R. § 404.1572(b), 416.972(b); *Corrao v. Shalala*, 20 F.3d 943, 946-47 (9th Cir. 1994).

In this case, Plaintiff testified that he reported earnings in 2008 of $1,250 at RTK Producers, and $8,866 in self-employment earnings.  (Tr. 57.) The ALJ found Plaintiff's statements not credible, and as discussed below, Plaintiff's challenge to the credibility finding fails.  The court must uphold the ALJ's

credibility determination when the findings are not based on legal error and are supported by substantial evidence. *Tackett* 180 F.3d at 1097. Moreover, even if Plaintiff did not receive any payments for his work, remuneration is not dispositive. Substantial gainful activity can be found even where the claimant was not paid. 20 C.F.R. § 404.1572(b), 416.971; *Corrao*, 20 F.3d at 946-47. As a result, the ALJ's substantial gainful activity finding is supported by substantial evidence and thus, Plaintiff was properly deemed disqualified from benefits.

Even if the ALJ erred in finding Plaintiff engaged in substantial gainful activity, the error is harmless. Harmless error occurs only if the error is inconsequential to the ultimate nondisability determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Because the ALJ made properly supported alternate findings after completing the sequential evaluation process, any error which may have been made at step one is inconsequential to the ultimate nondisability determination.

**2.   Credibility.**

Plaintiff contends that the ALJ erred by finding him not credible. (ECF No. 15 at 8-13.) The ALJ found that Plaintiff's activities of daily living were inconsistent with his claimed impairments. The ALJ found Plaintiff made inconsistent statements about his lawn mowing and his comprehension abilities. Finally, the ALJ relied upon two physical exam reports that indicated Plaintiff exhibited three positive Waddell signs. (Tr. 20.)

When the ALJ finds a claimant's statements as to the severity

of impairments, pain, and limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). If no affirmative evidence exists that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986). Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant. In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 958-59.

In this case, the ALJ found Plaintiff's complaints about the severity of his impairments less than credible. (Tr. 20.) The ALJ relied partly upon the fact that during two separate physician

exams, the physicians noted the presence of at least three Waddell[1]
signs.  The record supports this finding.  Notes from a November,
2008 exam conducted by Patrick Soto, D.O., indicated that Plaintiff
suffered from "chronic pain syndrome with a nonorganic component to
the pain as evidenced by his pain behaviors and Waddell signs," but
included the parenthetical proviso: "this does NOT translate to the
patient is faking it." (Tr. 326.)  During a November 9, 2009,
examination, Daniel A. Brzusek, D.O., noted Plaintiff exhibited
three of eight Waddell's criteria.  (Tr. 694.)  Plaintiff argues
that Waddell signs are misunderstood and were not intended to be
used as indicators of malingering.  Notwithstanding Plaintiff's
claims, the Ninth Circuit continues to rely upon Waddell signs to
indicate malingering.  *See, e.g., Satterwaite v. Astrue*, 781
F.Supp.2d 898 (9th Cir. 2011).  Moreover, Alfred Scottolini, M.D., a
reviewing physician opined that Plaintiff presented "a chr[onic]
pain syndrome problem, with definite supratentorial aspects . . . .
Review of this file reveals no anatomical or pathophysiological
reason for this [claimant's] allegations, i.e., they are unsupported
by clin[ical] evidence." (Tr. 329.) As a result, sufficient evidence
exists in the record to support the ALJ's interpretation that

---

[1]"Waddell's signs" are a group of physical signs that may
indicate a non-organic or psychological component to lower back
pain. Waddell's signs are also used to detect malingering or
exaggeration in patients complaining of lower back pain. See
Waddell, Gordon; John McCulloch, Ed Kummel, Robert Venner
(March/April 1980), "Nonorganic Physical Signs in Low-Back Pain,"
Spine 5(2): 117–125.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

Plaintiff's complaints about the severity of his symptoms were not credible.

Additionally, Plaintiff testified that his daily activity usually involved going to his in-laws' house, where he sits and talks. (Tr. 68-69.) After one to two hours, he drives home, or his spouse drives him. (Tr. 69.) Plaintiff testified that he watches television for about four hours per day, he cannot use a computer, and every two or three days he helps his spouse vacuum and do laundry. (Tr. 69-70.) He sometimes accompanies her to the grocery store, and leans against the magazine rack while she shops. (Tr. 71.) He said his son mows his lawn. (Tr. 72.) On his function report, Plaintiff wrote under "house and yard work" that he does his own laundry, has a riding lawn mower, and waters the lawn. (Tr. 172.) He stated he does the laundry and waters the lawn weekly. (Tr. 172.)

The ALJ's conclusion that Plaintiff's inconsistent statements about the care of his lawn is supported by the evidence. While Plaintiff's statement that he "has" a riding lawn mower is ambiguous, it implies he mows his lawn. Even if the ALJ's interpretation is not reasonable, other substantial evidence in the record supports the ALJ's conclusion that Plaintiff's reported daily activities were inconsistent with his claims about the severity of his impairments. For example, the record supports the ALJ's conclusion that Plaintiff's allegation about his impaired comprehension was inconsistent with his activities. (Tr. 20.) Plaintiff testified that he has trouble reading, he has to read things several times to understand what he has read, and his comprehension is impaired. (Tr. 54-55; 66.) Yet Plaintiff also

testified that he assisted people complete immigration forms, and he billed them for his work.  (Tr. 57-58.)

Plaintiff testified that he has daily severe headaches that require him to take medication and lie down for at least an hour every four hours, daily.  (Tr. 60.)  He also said he has constant severe neck pain that leaves his fingers and arms numb and his shoulder pain leaves him unable to lift his arms or reach.  (Tr. 62-63.)  The Plaintiff also complained he drops things without any warning.  (Tr. 66.)  Plaintiff testified that he has daily low back pain localized in his tailbone and buttocks.  (Tr. 63.)  He said he can sit for only ten to twenty minutes at a time and stand for about ten minutes.  (Tr. 64.)

By contrast, Plaintiff testified that he was able to perform many tasks of daily living without assistance.  For example, he dresses and bathes himself when he takes his pain medication.  He can shave, eat, drive, and he helps with vacuuming, laundry, cooking basic meals, and household tasks. (Tr. 67-71; 171-72; 199; 201.) Because the record supports that Plaintiff could perform many daily tasks that belied his complaints about the severity of his impairments, the ALJ's credibility determination is supported by sufficient evidence and the ALJ's reasons for discounting Plaintiff's credibility are clear and convincing.

**3.   Step Two: Depression.**

Plaintiff argues that the ALJ erred by failing to find depression as one of his severe impairments.  (ECF No. 15 at 13-15.) The ALJ found no evidence Plaintiff sought treatment for depression and, thus, concluded that Plaintiff's depression was not medically determinable.  (Tr. 18.)

At step two of the sequential evaluation process, a plaintiff has the burden to present evidence of medical signs, symptoms, and laboratory findings that establish a medically determinable physical or mental impairment that is severe and that can be expected to result in death or last for a continuous period of at least 12 months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)). A "medical sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Ukolov*, 420 F.3d at 1005. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two when "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." *Ukolov*, 420 F.3d at 1004-05 (citing SSR 96-4p). An impairment may never be found solely on the basis of the claimant's symptoms. *Ukolov,* 420 F.3d at 1005.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (citation omitted).

In this case, as the ALJ found, the record lacked evidence that

Plaintiff sought treatment specifically for depression. (Tr. 18.) The ALJ noted that Plaintiff testified he was taking antidepressant medication, but in 2009, Plaintiff denied he was depressed during a visit with treating physician Dr. Brzusek, D.O.  (Tr. 18.)  The record supports the ALJ's determination.  For example, Daniel Brzusek, D.O., noted after a November 9, 2009, exam that Plaintiff's diagnosis did not include depression, and his mood and affect were not depressed. (Tr. 691-92.) Additionally, in a January 2010 exam, Plaintiff reported to Jane Thompson, Ph.D., that he had been taking antidepressants since June 2009 for depression and the medicine helped him.  (Tr. 717.)  If an impairment can be controlled effectively with treatment, it is not disabling for social security purposes.  See *Warre v. Comm'r of Social Security Administration*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Additionally, Plaintiff completed a Beck Depression Inventory II (BDI-II), which indicated that he was suffering "from moderate symptoms of depression." (Tr. 728.)  The record indicates that Plaintiff's depression was mild, and the symptoms were controlled by medication. As a result, the ALJ properly found that depression was not a severe impairment.

**4.    Residual Functional Capacity.**

Plaintiff argues that the hypothetical posed to the vocational expert was flawed because it failed to address Plaintiff's depression and the side effects of his medications. (ECF No. 15 at 16.) Plaintiff also argues the ALJ erred by finding a viable labor market existed because the vocational expert acknowledged Plaintiff's inability to use a computer eroded the labor market, but failed to provide specific numbers.  (ECF No. 15 at 15.)

The ALJ is responsible for determining a claimant's residual

functional capacity. SSR 96-5p. A claimant's residual functional capacity is the most the claimant can do, considering his impairments and limitations. SSR 96-8p. In assessing a claimant's residual functional capacity, the ALJ must base his decision on the evidence as a whole, and must consider the entire record and explain how he weighed the medical evidence and testimony. SSR 96-8p. The court will affirm the ALJ's determination of Plaintiff's RFC if the ALJ applied the proper legal standard and the decision is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In this case, the ALJ found that based upon Plaintiff's residual functional capacity, he was able to return to his past relevant work selling cars. (Tr. 25.)

The ALJ is "responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities," in these proceedings. *Richardson*, 402 U.S. at 400; *Andrews*, 53 F.3d at 1039; SSR 96-8p. The final determination regarding a claimant's ability to perform basic work is the sole responsibility of the ALJ. 20 C.F.R. §§ 404.1546, 416.946; SSR 96-5p (RFC assessment is an administrative finding of fact reserved to the ALJ). As discussed above, the ALJ considered the record in its entirety and factored in both the lack of medical evidence related to treatment for depression, and Plaintiff's lack of credibility. As such, Plaintiff's depression and limitations caused by symptoms were properly excluded from the hypothetical and RFC. Additionally, the ALJ neither found, nor did Plaintiff establish, that Plaintiff is incapable of using a computer. Instead, Plaintiff merely testified that he "tried to learn how to use [his daughter's computer] and I get lost and don't know what to do." (Tr. 70.) Evidence does not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

exist in the record that Plaintiff's alleged inability to use the computer is related to a medically determinable impairment.

The RFC is supported by substantial evidence in the record and the hypothetical to the vocational expert properly incorporated the limitations identified by the ALJ. The hypothetical posed to the vocational expert contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper. See *Magallenes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). *Bayliss*, 427 F.3d at 1217–18. Where the ALJ's determination is a rational interpretation of the evidence, and substantial evidence supports the determination of disability, the court may not substitute its judgment for that of the Commissioner. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). As a result, the ALJ did not err.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF NO. 14)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(ECF NO. 16)** is **GRANTED**;

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

shall be closed and judgment entered for Defendant.

DATED February 21, 2012.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE